**In re Clyde James PIETRI (S.S. # 437–42–9507), Debtor.**

**Jack Patrick HARRIS, Trustee of Clyde J. Pietri; and Dorothy M. Pietri, Plaintiffs,**

v.

**Clyde J. PIETRI and Billie Jean Smith Pietri, Defendants.**

**Bankruptcy No. 84–00352.
Adv. No. 85–0060.**

United States Bankruptcy Court,
M.D. Louisiana.

Feb. 26, 1986.

David S. Rubin, Baton Rouge, La., for plaintiffs.

MacAllynn J. Achee, Baton Rouge, La., for defendants.

**MEMORANDUM OPINION DENYING MOTION FOR SUMMARY JUDGMENT**

WESLEY W. STEEN, Bankruptcy Judge.

### I. Jurisdiction of the Court

This is a proceeding arising under Title 11 U.S.C. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C.

See also, Bkrtcy., 59 B.R. 62.

§ 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(H); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

The Debtor's answer to the petition denies jurisdiction over the subject matter. The allegation does not appear to be a considered response to the petition, but rather appears to be (what has become) the customary and hopeful allegation of all defendants in bankruptcy proceedings. The objection to jurisdiction is dismissed because jurisdiction vests in a District Court under 28 U.S.C. § 1334(b) and in the Bankruptcy Court by virtue of the aforementioned Local Rules of Court. The issue is not whether there is no jurisdiction, but rather whether the Bankruptcy Judge may determine the issue or may simply issue findings of fact and conclusions of law.[1] For reasons stated above, the Court concludes that this is a core matter that the Bankruptcy Judge may determine.

No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

## II. Facts

There is no dispute about the following facts:

James Clyde Pietri ("the Debtor") and Billie Jean Smith signed a "marriage contract" on November 1, 1981. The contract is quite simple; the spouses merely rejected the Louisiana statutory scheme of community property and agreed to live under a separate property regime. The Debtor and Billie Jean Smith were married on November 14, 1981. At the time of their marriage, and until January of 1984, the couple resided in Tangipahoa Parish, Louisiana. After January of 1984, the couple had their matrimonial domicile in Livingston Parish, Louisiana.

The marriage contract was not recorded until April 25, 1984. It was recorded in Tangipahoa Parish, Louisiana, and nowhere else.

Two weeks after the contract was filed for record, the Debtor filed the bankruptcy petition in this Court: May 9, 1984.

## III. The Law

The complaint seeks to avoid the marriage contract on the grounds that it is a fraudulent conveyance. The Complainant filed a motion for summary judgment.[2]

La. CC Art. 2325[3] provides as follows: "A matrimonial regime is a system of principles and rules governing the ownership and management of the property of married persons as between themselves and toward third persons."

1. *In re S. E. Hornsby & Sons Sand and Gravel Co., Inc.,* 45 B.R. 988 (Bkrtcy., M.D.La., 1985).

2. The motion requests summary judgment on all claims raised in the complaint; the complaint includes allegations seeking avoidance of preferential transfers, avoidance of fraudulent conveyances, invocation of the trustee's § 544 "strong arm" powers, *etc.* The memorandum in support of the motion for summary judgment, however, states that the motion is limited to a request for summary judgment on the § 548 (fraudulent transfer) issue. Since the other issues were not briefed or supported by affidavits or other facts, the Court assumes that the trustee has abandoned those issues for purposes of the instant motion for summary judgment. To the extent that he has not, summary judgment is denied for failure of sufficient information in the record on which the summary judgment could be granted.

3. All future references to "Articles" or "Art." shall refer to Articles of the Louisiana Civil Code.

The community property regime established by law, the "legal regime", applies to a married couple unless and except to the extent that the couple modifies that legal regime by contract.[4] Under the legal regime, any property acquired during the existence of a legal regime through the effort, skill, or industry of either spouse, property acquired with community things or with commingled (community and separate) things, property donated to the spouses jointly, natural and civil fruits of community property, and damages awarded for the loss or injury of a thing belonging to the community, and all other things that are not separate property are community property in which each spouse owns a present undivided one-half interest.[5]

The spouses may modify the legal regime by a matrimonial agreement entered into before the marriage.[6] Art. 2332 provides as follows:

"A matrimonial agreement ... is effective towards third persons as to immovable property, when filed for registry in the conveyance records of the parish in which the property is situated and as to movables when filed for registry in the parish or parishes in which the spouses are domiciled."

Section 548 of the Bankruptcy Code provides that the trustee may avoid any transfer of an interest of the debtor in property that was actually or constructively fraudulent. Section 101(48) defines "transfer" as including "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." The Bankruptcy Code does not define the term "property." However, § 541 of the Bankruptcy Code defines "property of the estate" to include "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case."

The question for decision is whether a matrimonial agreement[7] entered into prior to marriage but recorded some years subsequent, and only fourteen days before the filing of a bankruptcy petition, is a fraudulent transfer as defined by § 548 of the Bankruptcy Code. For the following reasons, the Court concludes that it is not and summary judgment is denied.

Obviously, for there to be a fraudulent transfer avoidable under § 548, there must be a transfer, and the transfer must affect an interest of the debtor in property. After carefully considering the Complainant's memorandum, and after considering at length the issues raised in the complaint, the Court concludes that there are two theories under which the Complainant asserts that § 548 applies.

■ First, there could be a transfer of an interest in property if the effect of the recordation of the matrimonial agreement was to remove an asset or to remove value from the Debtor's patrimony. Art. 2332 of the Louisiana Civil Code, however, provides that the matrimonial agreement is not effective as to third parties until the date of its recordation. As to third parties, therefore, the effects of the legal community property regime existed from the date of the marriage until April 25, 1984, and any property acquired during that period was community property, at least as to creditors; that property then became property of the estate under § 541 of the Bankruptcy Code.[8] Therefore, the recordation of the matrimonial agreement did not remove any property that would have been proper-

4. Art. 2328.

5. Art. 2338, 2336.

6. Art. 2328, 2329.

7. The Civil Code term is "matrimonial agreement"; the parties executed a "marriage contract." This opinion will use the terminology of the Civil Code rather than the terminology the parties elected to use.

8. In similar reasoning, this Court has previously concluded that when a community regime has terminated, but the property has not been partitioned as provided in the Civil Code, then property of the estate includes property of the former community: *In re Hendrick* 45 B.R. 976 (Bkrtcy., M.D.La., 1985).

ty of the estate if the matrimonial agreement had not been recorded. The recordation of the matrimonial agreement may have prevented further accretion, but that is the subject of the next paragraph. For purposes of the analysis of this paragraph, it suffices to conclude that the recordation did not diminish the patrimony of the Debtor.

Second, recordation of the matrimonial agreement could constitute a transfer of an interest of the Debtor in property if the Debtor had a property interest in the continuance of the matrimonial agreement. But that does not appear to be the case. As noted, Louisiana law defines a matrimonial regime as a system of principles and rules governing the ownership and management of the property of married persons. Nowhere is there any discussion of any property right that a spouse would have in the continuance of such a regime. In addition, § 541 of the Bankruptcy Code does not include in property of the estate any property interest that the debtor might have in the continuation of the community; § 541 of the Bankruptcy Code clearly defines property of the estate to include only the interest of the debtor and the debtor's spouse in community property as of the commencement of the case. Therefore, the Court concludes that the recordation of the matrimonial agreement did not transfer the interest of the Debtor in property since the Debtor's interest in a continued matrimonial regime is not a property interest as that term is used by the Bankruptcy Code.

The motion for summary judgment is denied as a matter of law since the Court concludes that recordation of a matrimonial agreement, which merely terminates the legal regime and avoids prospective accretion to the assets of the community, is not *per se* a fraudulent transfer even if the termination of that regime is effective as to third parties within weeks prior to the filing of a bankruptcy petition. There are several issues that are not decided by this memorandum. First, the Defendant did not file a counter-motion for summary judgment, and, consequently, the effect of this ruling is merely to deny the Complainant's motion for summary judgment and does not grant summary judgment in favor of the Defendant. Second, the decision is only with respect to the legal question of whether the termination of a matrimonial regime is *per se* a fraudulent transfer under § 548 of the Bankruptcy Code. This opinion does not reach any determination with respect to rights under § 544 or § 547. Nor does this opinion hold that under no circumstances could the termination of a matrimonial regime constitute a fraudulent transfer; nor does this opinion reach any conclusion with respect to what assets in this case constituted assets of the former community, and, consequently, property of the estate.

The motion for summary judgment is denied, and a separate order will be rendered this date.